IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

HARRY A. LOWERS,

          Plaintiff,

v.                                                                                    CIVIL ACTION NO.   2:15-cv-12805

EAGLE BLUFF STEEL ERECTORS, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Partial Summary Judgment. (ECF No. 43.) For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

*I.   BACKGROUND*

Plaintiff Harry Lowers brings this action against Defendants Eagle Bluff Steel Erectors, Inc. ("Eagle Bluff") and its employee, Stanley Bostic, alleging causes of action arising out of a motor vehicle accident that occurred on October 23, 2014. Mr. Lowers filed his Complaint in this Court on August 24, 2015. (ECF No. 1.) According to the Complaint, Mr. Lowers was driving his employer's armored van southbound on U.S. Route 119 in Boone County, West Virginia, at approximately 7:02 a.m., when his vehicle struck the flatbed trailer attached to a tractor operated by Mr. Bostic and owned by Eagle Bluff. (*See id.* at 2, ¶¶ 8–9.) Mr. Lowers alleges that Mr. Bostic caused the accident because he failed to yield right-of-way when attempting to turn left

1

across the southbound lanes of U.S. Route 119 to travel northbound. (*See id.* at 2–3, ¶¶ 9–10.) The flatbed trailer attached to Mr. Bostic's truck did not clear the southbound lanes in time for Mr. Lowers to avoid a collision. (*See id.*) Mr. Lowers also alleges that Mr. Bostic and Eagle Bluff failed to comply with various laws and regulations regarding operating commercial vehicles, "including not having any type of lighting devices or reflective materials on the flatbed trailer unit, which directly contributed to the accident." (*Id.* at 3, ¶ 11.) Mr. Lowers claims he could not see the truck in time because it was not properly lit. (*See id.*) As a result of Defendants' alleged "negligence and recklessness, Plaintiff violently collided with the flatbed trailer that was illegally blocking his path of travel." (*Id.*) Mr. Lowers contends that the carelessness and recklessness of Defendants generates the following causes of action: Count I) negligence against Mr. Bostic; Count II) negligence against Eagle Bluff; and Count III) punitive damages against all Defendants. (*See id.* at 3–9.) Only Counts II and III of the Complaint are the subject of Defendants' motion. (*See generally* ECF No. 44.) Defendants filed an answer to the Complaint on October 2, 2015. (ECF No. 8.)

Defendants filed this motion for partial summary judgment and memorandum in support of its motion on July 7, 2016. (ECF Nos. 43, 44.) Mr. Lowers responded to Defendants' motion for partial summary judgment on July 21, 2016, (ECF No. 47), and Defendants filed a reply memorandum in support of the motion on July 28, 2016. (ECF No. 48.) The motion for partial summary judgment is fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to

2

a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there exist factual issues that properly can be resolved only by a trier of fact because they may reasonably be determined in favor of either party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Id.*

When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the nonmoving party. *Mellen v. Brunting*, 327 F.3d 355, 363 (4th Cir. 2003). "[T]he issue of material fact required by Rule 56[a] to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The nonmoving party may not rest on the pleadings alone and must show that specific material facts exist by offering more than a mere "scintilla of evidence" in support of his position. *Id.* at 252. Summary judgment is also appropriate when the inquiry involves a pure question of law. *Taft v. Vines*, 70 F.3d 304, 316 (4th Cir. 1995), *vacated en banc on different grounds*, 83 F.3d 681 (4th Cir. 1996).

3

### III. DISCUSSION

Defendants move for partial summary judgment, arguing in part that Mr. Lowers' negligence claim against Eagle Bluff is premised upon several alleged violations of the Federal Motor Carrier Safety Regulations ("FMCSR") that do not create a private cause of action. (*See* ECF No. 44 at 4–6.) Thus, Defendants argue that Count II must fail as a matter of law. (*Id.* at 4.) Defendants further argue that Mr. Lowers' punitive damages claim within Count III fails as a matter of law because "gross fraud, malice, oppression or criminal indifference to civil obligations" are not present in this "simple negligence case." (*Id.* at 8.) Each of these two counts is addressed below.

#### A. *Claim of Negligence Against Eagle Bluff*

To survive summary judgment, a plaintiff must put forward evidence of the following elements of a negligence claim: 1) that the defendant owed him a duty of care; 2) that the duty was breached by some act or omission; and 3) that the act or omission proximately caused 4) some injury to the plaintiff that is compensable by damages. *Hersh v. E-T Enters., Ltd. P'ship*, 752 S.E.2d 336, 341 (W. Va. 2013). *See also McNeilly v. Greenbrier Hotel Corp.*, 16 F. Supp. 3d 733, 738 (S.D.W.Va. 2014). In establishing a duty, the "ultimate test . . . is found in the foreseeability that harm may result" and whether "the ordinary man in the defendant's position, knowing what he knew or should have known, [would] anticipate that harm of the general nature of that suffered was likely to result." *Hersh*, 752 S.E.2d at 338. To establish a breach, the defendant must be guilty of an act or omission that violates a duty owed to the plaintiff. *See Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016) (citing *Morrison v. Roush*, 158, S.E. 514, 514 (W. Va. 1931)). Businesses will not be held liable under a theory of negligence

4

unless they "breach their duty of reasonable care under the circumstances." *Crum v. Equity Inns, Inc.*, 685 S.E.2d 219, 226 (W. Va. 2009). This negligent breach "must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." *Aikens v. Debow*, 541 S.E.2d 576, 581 (W. Va. 2000) (emphasizing the necessary relationship between foreseeability and duty).

Defendants' motion characterizes the negligence claim against Eagle Bluff in Count II as a claim under the FMCSR. (*See* ECF No. 44 at 4.) The motion cites cases from various federal jurisdictions, including two from within the Fourth Circuit, to support the assertion that "alleged violations of the FMSCR do not create a private cause of action." (*See id.* at 4–5.) Despite Defendants' assertion that Count II is a private cause of action brought under the FMCSR, the Court does not agree. Mr. Lowers' claim is a common law negligence claim that uses state law and federal regulation as a partial basis for the duty that Eagle Bluff owed to Mr. Lowers. (*See* ECF No. 1 at 6–7.)

Mr. Lowers asserts within his negligence claim that Eagle Bluff's duty to him was "to exercise reasonable and ordinary care and to comply with the laws and regulations of the State of West Virginia and the United States regarding the operation of commercial vehicles." (ECF No. 1 at 6, ¶ 23.) Mr. Lowers further argues that Eagle Bluff is responsible for its drivers' actions as well as the maintenance and upkeep of its vehicles. (*See* ECF No. 47-2 at 20–21, 27.) Mr. Lowers claims that Eagle Bluff breached those duties by "failing to follow state and federal law and guidelines regarding proper lighting and equipment on the tractor and trailer unit, failing to ensure the proper groove pattern depth on the tires, and failing to illuminate the trailer to allow it to be seen by oncoming vehicles." (ECF No. 1 at 6, ¶ 25. *See also* ECF No. 47-3 at 42–43.)

5

These alleged violations arise under the FMCSR and Tennessee State Code. (*See* ECF No. 47-2 at 14–27; ECF No. 47-4 at 1.) Further, Mr. Lowers argues that Eagle Bluff is vicariously liable for the allegations of negligence against its employee, Mr. Bostic, (s*ee* ECF No. 1 at 6, ¶ 26; ECF No. 47-2 at 20–27), which arise in part under the FMCSR and West Virginia Code. (*See* ECF No. 47-2 at 12–13.) Mr. Lowers states in the Complaint that "[a]s a direct, proximate and foreseeable result of the Defendant Eagle Bluff's careless, reckless, and negligent actions and conduct as described herein, Plaintiff suffered severe and permanent personal injuries . . . ." (ECF No. 1 at 8, ¶ 29. *See also* ECF No. 47-2 at 27.) These claims provide the basis for Mr. Lowers' prima facie case of negligence against Eagle Bluff, and Defendants mischaracterize the nature of Mr. Lowers' claim insofar as they rely in their motion and reply on a belief that Count II of the Complaint arises solely under the FMSCR.

For these reasons, Defendants' motion for summary judgment on Count II is **DENIED**.

*B. Punitive Damages*

Second, Mr. Lowers has requested punitive damages in this case. As a general rule, punitive damages are not recoverable for simple negligence. *See, e.g.*, *Bennet v. 3 C Coal Co.*, 379 S.E.2d 388, 394 (W. Va. 1989). The plaintiff, rather, must show that the defendant engaged in "a willful, wanton, reckless or malicious act." *See Wells v. Smith*, 297 S.E.2d 872, 875 (W. Va. 1982). This Court has stated, "[a] court errs in denying a defendant's motion for summary judgment [on] a claim for punitive damages if the allegations of the complaint do not set forth the type of exceptional conduct transgressing mere negligence needed to support an award of punitive damages." *Surber v. Greyhound Lines, Inc.*, No. 2:06-CV-00273, 2006 WL 3761372, at *4 (S.D.W.Va. Dec. 21, 2006). In West Virginia, the question of punitive damages can be sent to

6

the jury only when evidence exists that the defendant acted with "'wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting rights of others . . .' or where the legislature so authorizes." *Muzelak v. King Chevrolet, Inc.*, 368 S.E.2d 710, 715 (W. Va. 1988) (quoting *Cook v. Heck's Inc.*, 342 S.E.2d 453, 454 (W. Va. 1986)). A punitive damages award "is the exception, not the rule, as the level of bad conduct on the part of a defendant must be very high in order to meet the punitive standard." *Hurley v. Averitt Exp., Inc.*, No. 2:11-cv-00624, 2012 WL 4742274, at *4 (S.D.W.Va. Oct. 3, 2012) (quoting *Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 910 (W. Va. 2010)).

The following cases illustrate the type of conduct required to find that punitive damages are appropriate in motor vehicle accident cases. First, punitive damages were an appropriate part of jury instructions in *Wilburn v. McCoy*, where the evidence demonstrated the following:

> [T]hat petitioner acted with criminal indifference to the civil rights of others by continuously and repeatedly driving unlawfully and without a valid license; that he was speeding at the time of the accident; that he denied using controlled substances but tested positive for various controlled substances immediately following the accident; that he failed to render aid after the accident; and that he attempted to leave the scene.

No. 14-0054, 2014 WL 5712761, at *4 (W. Va. Nov. 3, 2014) (memorandum decision). Similarly, jury instructions that included punitive damages were appropriate when a defendant driver with a blood-alcohol content of .19 percent attempted to pass a tractor trailer on an interstate highway by driving in the far right-hand emergency parking only lane. *See Perry v. Melton*, 299 S.E.2d 8, 11 (W. Va. 1982) (explaining that the defendant hit a parked, disabled tractor trailer before crossing the highway and hitting the plaintiff's decedent's oncoming automobile). Lastly, punitive damages were a proper claim when evidence showed that the driver of a tractor trailer, who was driving along an interstate highway and using a cellular device, saw a vehicle stopped on

7

the shoulder of the interstate but, nonetheless, took his attention off the road and hit two people standing outside the parked car.[1]  *See Shulin v. Werner*, No. 1:15CV95, 2015 WL 4730064, at *4 (N.D.W.Va. Aug. 10, 2015) (noting that the defendant driver almost struck a vehicle in the left-hand lane before overcorrecting across the right-hand lane and veering onto the shoulder where the two people stood).

Courts, however, are hesitant to allow a claim for punitive damages to survive summary judgment in negligence cases involving motor vehicle accidents.  For example, the court in *White* granted partial summary judgment as to punitive damages in a case where a tractor trailer driver traveled on an interstate highway and collided with the plaintiff's car.  *See White v. Swift Transp. Co. of Ariz., LLC*, No. 1:12CV20, 2013 WL 12108650, at *1 (N.D.W.Va. Mar. 15, 2013) (noting that the conditions the day of the accident were snowy, and that the defendant driver, who conceded that his negligence caused the accident, was cited for failure to maintain control and driving too fast for the conditions).  The court called the undisputed facts of *White* "nothing more than a garden-variety negligence claim."  *Id.* at *2.  Additionally, the conduct of a West Virginia taxi driver was deemed not willful and wanton even though he drove "at a dangerous speed" in snowy conditions, causing the taxicab to "slip[ ] and skid[ ] frequently during the [82-mile] trip . . . ." *See Kelly v. Checker White Cab*, 50 S.E.2d 888, 892–93 (W. Va. 1948) (citing *Friedman v. Jordan*, 184 S.E. 186, 187 (Va. 1936), in support of the proposition that "[w]illful or wanton conduct imports knowledge and consciousness that injury *will result* from the act done" (emphasis added)).

---

[1] The defendant driver in *Shulin* was cited or written up by his employer repeatedly for "failure to use his mirrors, using his cellular device while driving, and general inability to control the tractor trailer safely."  2015 WL 4730064 at *4 (emphasizing that despite the employer's knowledge of the deficiencies, it continued to allow him to drive the tractor trailer).

Furthermore, the failure to comply with regulations does not, by itself, render punitive damages appropriate. This Court granted summary judgment after finding insufficient evidence to support a claim of punitive damages in *Harris* despite the plaintiff's argument that the defendant transportation company "violated federal safety regulations, and ha[d] allegedly done so for years." *See Harris v. Norfolk S. Ry. Corp.*, No. 2:11-cv-00497, 2012 WL 6209164, at *16 (S.D.W.Va. Dec. 13, 2012), *rev'd in part on other grounds*, 784 F.3d 954 (4th Cir. 2015). Also, punitive damages were not available to the plaintiff in *Surber* when "[t]he only evidence . . . [was] that Mr. Donovant failed to comply with a regulation . . . ." 2006 WL 3761372, at *4. At least one other district has declined to rule on whether a failure to abide by federal regulations alone justifies punitive damages. *See Shinn v. Greeness*, 218 F.R.D. 478, 490 (M.D.N.C. 2003) (declining to reach the issue because the plaintiff alleged willful and wanton conduct "beyond the mere violation of a regulation or code").

Mr. Lowers, in this case, asserts that Defendants' acts and omissions, which proximately caused his injuries, "are not isolated to the events set forth in th[e] Complaint." (*See* ECF No. 1 at 8, ¶ 31; *see also* ECF No. 47-2 at 7–27; ECF No. 47-3 at 19–20, 55–59.) Rather, Mr. Lowers argues that because Defendants received previous citations for "violations of motor safety regulations relating to lighting, brake systems, tire treads, recordation of driver hours, failing to secure loads, and drivers operating without seatbelts," and were "attempting to conduct commercial interstate business without valid authority," Defendants have demonstrated "a pattern of unsafe operation and maintenance of commercial motor vehicles which constitutes a conscious and reckless disregard for the safety of others." (ECF No. 1 at 8, ¶¶ 31–32. *See also* ECF No. 47-2 at 27.) The Complaint and supporting evidence also describe Defendant Bostic's driving as

9

reckless because he "fail[ed] to yield right-of-way, block[ed] Plaintiff's path of travel, and fail[ed] to illuminate the trailer to allow it to be seen by oncoming vehicles." (*See* ECF No. 1 at 2, ¶ 10; 3, ¶¶ 11, 15; *see also* ECF No. 47-3 at 38–40, 42–43, 52.)

Mr. Lowers also argues in his brief that this case is more than simple negligence because operating heavy, commercial vehicles and tractor trailers is an inherently dangerous activity.[2] (*See* ECF No. 47 at 8.) He refers to various "conscious decision[s]" made by Defendant Bostic that allegedly show willful and reckless behavior, such as "operat[ing] the tractor-trailer and flatbed unit without the proper lighting, reflective materials and tire depth . . . [and] attempt[ing] to cross a busy intersection, prior to it being clear." (*Id.* at 9. *See also* ECF No. 47-2 at 129; ECF No. 47-3 at 36–53.) Additionally, Mr. Lowers refers to Defendants' alleged FMCSR violations and Eagle Bluff's inactive corporate status as evidence of their "pattern and practice of unsafe driving . . . ." (ECF No. 47 at 9–10. *See also* ECF No. 47-3 at 18–19, 23–24; ECF No. 47-4 at 1.) Lastly, Mr. Lowers attached to his reply a report from David Stopper, Director of Stopper & Associates, LLC, a motor carrier safety and highway collision research firm, who claims, "It is my opinion Eagle Bluff Steel Erectors and Mr. Bostic exhibited a conscious and reckless disregard for the safety of the motoring public by significant non-compliance with the FMCSA and industry standards." (ECF No. 47-5 at 14.) The report also states, "The significant

---

[2] Plaintiff's brief does not cite any case law in support of this proposition that the operation of heavy, commercial vehicles and tractor trailers is inherently dangerous. (*See* ECF No. 47 at 8.) However, the Supreme Court of Appeals of West Virginia has held that the operation of an empty logging truck on highways is not an inherently dangerous activity. *See King v. Lens Creek Ltd. P'ship*, 483 S.E.2d 265, 272 (W. Va. 1996). *See also Shaffer v. Acme Limestone Co.*, 524 S.E.2d 688, 699 (W. Va. 1999) (holding that the operation of an empty truck normally used for hauling stone does not create the type of danger constituting an inherently dangerous activity and citing various state supreme court decisions outside West Virginia holding that activities involving large trucks and tractor trailers are not inherently dangerous). Here, Mr. Bostic's flatbed trailer was empty at the time of the accident, (*see* ECF No. 47-1 at 14), but the Court need not rule on this matter because the analysis for punitive damages focuses on the acts and omissions of a defendant and not solely the nature of the activity in which he or she is engaged.

10

lack of safety management controls show[s] a reckless and conscious disregard for the safety of the motoring public on the part of Eagle Bluff . . . ." (*Id.* at 15.)

Even in a light most favorable to Mr. Lowers, the evidence does not show conduct by Defendants that rises to the necessary level of "willful, wanton, reckless or malicious" to justify punitive damages.[3] *See Wells*, 297 S.E.2d at 875. Mr. Bostic stated in his deposition that before turning left across the two southbound lanes of Route 119 to travel northbound, he saw two cars traveling northbound in the far lane. (*See* ECF No. 47-3 at 37.) He "proceeded to cross" but stopped because the second car passed the first by switching to the inside lane, "which . . . was the lane that [Mr. Bostic] was going to turn into to make the turn." (*Id.*) At the time he proceeded into the intersection, he testified that "[he] had room enough to turn"; that he "didn't see the armored van"; and that "there was nothing coming [southbound]." (*Id.* at 38–39.)

The State of West Virginia Uniform Traffic Crash Report provides that the weather was clear and the roadway surface condition was dry at the time of the accident. (*See* ECF No. 47-1 at 1.) Additionally, it indicates that, at the time of the accident, Mr. Bostic's condition was normal, he was not distracted, and he was not suspected of using drugs or alcohol. (*See id.* at 6.) Beyond a "Fail[ure] to Yield Right of Way," the report indicates no known or suspected violations by Mr. Bostic. (*See id.* at 6–7.)

Mr. Lowers claims that he did not see Defendants' truck blocking the southbound lanes because "the trailer unit did not have any kind of lights on it." (ECF No. 47 at 4). While the police report's narrative agrees that "[t]he trailer unit on [Defendants' truck] did not have any kind

---

[3] To support his claim for punitive damages, Mr. Lowers attaches to his brief the traffic accident report, (ECF No. 47-1), two reports by David Stopper, (ECF Nos. 47-2, 47-5), a deposition of Mr. Bostic and Defendants' answers to interrogatories, (ECF No. 47-3), and Eagle Bluff's Tennessee corporate filing information. (ECF No. 47-4.)

of lights on it," the report concludes that the truck's lights ("Head, Signal, Tail, etc.") were not a contributing circumstance to the accident. (*See* ECF No. 47-1 at 4.) In fact, the report does not indicate that any defect with Defendants' truck was a contributing circumstance to the wreck.[4] (*See id.*) When asked during his deposition whether the lighting on the truck's flatbed trailer was adequate the morning of the accident, Mr. Bostic responded, "I thought so." (ECF No. 47-3 at 52.) The two trucks were traveling at a morning hour when it was "Dark - Not Lighted" outside, (*see* ECF No. 47-1 at 1), and the police report indicates that neither vehicle had any issue with head, signal, or tail lights. (*See id.* at 4, 8.) If Mr. Lowers' headlights were working as the police report shows, there is no evidence to suggest that his lights would not have illuminated the flatbed trailer blocking the road in front of him. In light of the police report and other evidence, the suggestion that the flatbed trailer was not adequately lit does not on its own elevate Defendants' conduct to willful or wanton.

Mr. Lowers also tries to show a dispute of material fact through Mr. Stopper's report. (*See generally* ECF No. 47-5.) The report provides information showing that Eagle Bluff did not keep certain administrative and human resources records, did not comply with various federal regulations under the FMCSR, and had faulty policies in place. (*See id.*) The report concludes that Eagle Bluff had notice of certain deficiencies, which led to "a conscious and reckless disregard for the safety of the motoring public." (*Id.* at 14–15.) However, this evidence does not speak to the specific cause of the accident on October 23, 2014, and the Court cannot find that Mr. Stopper's

---

[4] Options for the investigating officer to mark on the report include the following: brakes, wipers, steering, power train, mirrors, suspension, tires, wheels, lights (head, signal, tail, etc.), windows, truck coupling/trailer hitch/safety chains, and other. (*See* ECF No. 47-1 at 4.)

conclusion that Eagle Bluff's conduct was reckless is enough to allow a finding of punitive damages in this case.

The evidence shows that Mr. Bostic attempted to turn left across the two southbound lanes of Route 119 to travel northbound. (*See* ECF No. 47-1 at 2; ECF No. 47-3 at 36–40.) He was not speeding, distracted, or otherwise impaired. (*See* ECF No. 47-1 at 6.) He did not see any cars coming southbound and made a judgment call that he could turn into the inside northbound lane because the two cars he saw traveling northbound were in the outside lane. (*See* ECF No. 47-3 at 37–39.) The Court will not speculate whether Mr. Bostic could have successfully made the left turn if the events played out as he expected. Nonetheless, his conduct, as well as that of Eagle Bluff, that specifically contributed to the accident does not rise to the level of "willful, wanton, reckless or malicious" to justify punitive damages. Additionally, the violation of state law or federal regulations alone in this case does not make punitive damages appropriate. *See Surber*, 2006 WL 3761372, at *4. Even viewing the evidence in a light most favorable to Mr. Lowers, Defendants' acts or omissions are not of the type that will allow a punitive damages claim.

Accordingly, Defendants' motion for summary judgment on Count III is **GRANTED**.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Partial Summary Judgment (ECF No. 43) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                    ENTER:        October 14, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE